UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIE J. HARRIS,

             Plaintiff,

v.

UNKNOWN PARTY #1 et al.,

             Defendants.

_____/

Case No. 1:25-cv-501

Honorable Paul L. Maloney

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Unknown Party #1, Bonn, Garcia, Toogood, Demps, Washington and Leitheim. The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Simon and Richardson: all official capacity claims, First, Fourth, and Fourteenth Amendment claims, Eighth Amendment claims related to the staffing of ICF and labeling Plaintiff as a "rat," and any claims related to Plaintiff's grievances. Plaintiff's

Eighth Amendment claims against Defendants Simon and Richardson for failing to protect Plaintiff from the January 1, 2025, attack remain in the case.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E. Washington and the following ICF staff: Hearing Officers Unknown Party #1, named as "John Doe," and Unknown Demps; Warden Unknown Bonn; Assistant Deputy Warden Unknown Garcia; Prison Counselor Unknown Simon; Corrections Officers Unknown Toogood and Unknown Richardson; and Sergeant Unknown Leitheim. (Compl., ECF No. 1, PageID.2.) Plaintiff names all Defendants in both their individual and official capacities. (*Id.*)

Plaintiff alleges that, on an unidentified date, Plaintiff informed Defendant Simon that he was being threatened "by many gang members" and requested to be moved to protective custody. (*Id.*, PageID.3.) Defendant Simon denied Plaintiff's request. (*Id.*)

On January 1, 2025, Plaintiff was using the B-Wing J-Pay machine when a non-party prisoner attacked Plaintiff, stabbing Plaintiff multiple times. (*Id.*) Plaintiff yelled for help. (*Id.*, PageID.4.) Defendant Richardson observed the fight for three to four minutes while Plaintiff was being stabbed before calling for help. (*Id.*) During the time that the fight occurred, Defendant Toogood and non-party Officer Baitenger were responsible for B-Wing safety. (*Id.*, PageID.7.) Plaintiff claims that ICF is "well under staffed [sic]" and that "the stabbing could have been avoided had there been adequate staffing." (*Id.*)

Plaintiff alleges that he was falsely charged with misconduct because of the "fight." (*Id.*, PageID.4.) He claims that Defendants Simon, Demps, Garcia, and Unknown Party #1 "ignored the

2

video" evidence,[1] and that Defendant Demps presented evidence at Plaintiff's hearing that "contradict[ed] what really happen[ed]." (*Id.*, PageID.4, 6.) Based upon the evidence provided by Defendant Demps, Defendant Unknown Party #1 found Plaintiff guilty of possessing a weapon. (*Id.*, PageID.5.)

Plaintiff requested an appeal form from Defendant Demps but did not receive one. (*Id.*) Plaintiff was therefore unable to appeal his misconduct conviction and was denied "access to the court appeal process." (*Id.*, PageID.6.) Plaintiff filed a grievance against Defendant Demps, which Plaintiff later learned had not been submitted. (*Id.*, PageID.5–6.) Plaintiff then submitted a second grievance, which was denied. (*Id.*, PageID.6.) Plaintiff claims that, in denying his grievance, Defendant Leitheim provided false information. (*Id.*; *see* ECF No. 1-1, PageID.15.)

Plaintiff further claims that he was placed in segregation on the "false charges." (*Id.*, PageID.7.) A non-party Inspector told Plaintiff that Plaintiff would be held in segregation until his grievance was resolved. (*Id.*, PageID.7.) However, Plaintiff's grievance has been resolved at all three steps, and Plaintiff remains in segregation. (*Id.*)

Plaintiff protested his confinement to segregation by going on a hunger strike for six days and was placed in observation. (*Id.*, PageID.7.) Upon being released from observation, Plaintiff learned that his property and legal documents had been lost or destroyed. (*Id.*)

Finally, Plaintiff alleges that "staff" have labeled Plaintiff a "rat" because of Plaintiff's grievance. (*Id.*)

Plaintiff brings claims for violation of his First, Fourth, Eighth, and Fourteenth Amendment rights. (*Id.*, PageID.2.) Plaintiff claims that Defendants were deliberately indifferent to Plaintiff's

---

[1] Plaintiff does not describe the context in which Defendants Simon, Demps, Garcia, and Unknown Party #1 reviewed or "ignored the video" evidence.

safety, failed to protect Plaintiff, denied Plaintiff access to the "appeal courts," retaliated against Plaintiff for filing a grievance, and violated Plaintiff's rights to equal protection and due process. (*Id.*) As a result of the events described in the complaint, Plaintiff seeks declaratory and monetary relief. (*Id.*, PageID.8.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

4

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Official Capacity Claims for Money Damages

Plaintiff sues Defendants in their official as well as personal capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison*, 722 F.3d at 771.

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Therefore, Plaintiff may not seek monetary damages against Defendants in their official capacities, and he fails to state a claim against Defendants in their official capacities upon which relief can be granted.

Plaintiff also seeks declaratory relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief).

Here, most of Plaintiff's claims concern only past conduct, including claims related to the January 1, 2025, attack, Plaintiff's grievances and misconduct charge, and the loss or destruction of Plaintiff's property. However, Plaintiff brings two claims that may properly be characterized as alleging an ongoing violation: (1) Plaintiff Eighth Amendment claims premised upon the idea that ICF is understaffed, leading to the January 1, 2025, attack, and (2) Plaintiff's Fourteenth Amendment claims related to Plaintiff's continued placement in segregation. At this stage of the

proceedings, the Court will not dismiss these official capacity claims for declaratory relief based on immunity but will address these official capacity claims for declaratory relief on the merits.

### B.    Personal Capacity Claims Against Defendants Bonn, Garcia, Toogood, and Washington

Plaintiff identifies Defendants Bonn, Garcia, Toogood and Washington by their supervisory roles. Plaintiff makes no factual allegations against Defendants Washington and Bonn and alleges only that Defendant Garcia "ignored the video of the stabbing" (Compl., ECF No. 1, PageID.4), but does not describe the context in which Defendant Garcia ignored the video or contend that Defendant Garcia played any role in connection with Plaintiff's misconduct charges or hearing. Finally, Plaintiff alleges that Defendant Toogood was "in charge of B-wing safety" at the time that Plaintiff was stabbed. (*Id.*, PageID.7.)

First, as to Defendants Washington and Bonn, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).

The United States Court of Appeals for the Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted

constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011)

(quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)). Plaintiff's claims against

Defendants Washington and Bonn fall far short of the minimal pleading standards under Rule 8 of

the Federal Rules of Civil Procedure and are subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring

"a short and plain statement of the claim showing that the pleader is entitled to relief").

Second, with respect to each of these Defendants (i.e., Defendants Bonn, Garcia, Toogood

and Washington), government officials may not be held liable for the unconstitutional conduct of

their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556

F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active

unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v.*

*Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can

supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may

not be imposed simply because a supervisor denied an administrative grievance or failed to act

based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th

Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the

official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active

conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending
> individual is not actionable *unless* the supervisor either encouraged the specific
> incident of misconduct or in some other way directly participated in it." *Shehee,*
> 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have
> interpreted this standard to mean that "at a minimum," the plaintiff must show that

the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff fails to allege any facts showing that Defendants Bonn, Garcia, Toogood and Washington encouraged or condoned the conduct of their subordinates, or authorized, approved or knowingly acquiesced in the conduct. Indeed, he fails to allege any facts at all about their personal knowledge prior to or at the time of the January 1, 2025, "stabbing incident" or any active conduct that could be said to have led to a violation of Plaintiff's constitutional rights. Plaintiff offers nothing more than conclusory allegations. However, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Because Plaintiff's § 1983 claims against Defendants Bonn, Garcia, Toogood and Washington are premised on nothing more than respondeat superior liability, they are properly dismissed for failure to state a claim on which relief may be granted.

C.    **First Amendment Claims – Retaliation**

Plaintiff alleges that he was subjected to "retaliation for filing grievances." (Compl., ECF No. 1, PageID.2.) Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

9

motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

An inmate has a right to submit "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Here, Plaintiff alleges that he filed grievances following the January 1, 2025, stabbing incident. (Compl., ECF No. 1, PageID.3, 6.) Therefore, the Court will assume that Plaintiff satisfies the first element of a claim for First Amendment retaliation for purposes of screening.

Plaintiff does not specify the allegedly retaliatory acts or the Defendants responsible for retaliation. However, an examination of Plaintiff's complaint reveals that Plaintiff identifies two events following the submission of his grievances: (1) Plaintiff remained in segregation after his grievance was resolved; and (2) Plaintiff's property was lost or destroyed while Plaintiff was in observation. (Compl., ECF No. 1, PageID.7.) The Court will address Plaintiff's retaliation claims as premised upon these events.[2]

As with any § 1983 claim, "each [g]overnment official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. Thus, it remains Plaintiff's obligation to attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 544. Here, however, Plaintiff does not allege any facts that would plausibly suggest that any named Defendant was responsible for the decision to keep Plaintiff in segregation until his grievance was

---

[2] The Court has liberally construed Plaintiff's complaint; however, the generous construction of *pro se* complaint is not "boundless"; "[l]iberal construction does not require a court to conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (quoting *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

resolved or the loss or destruction of Plaintiff's property. Indeed, Plaintiff alleges that a non-party "Inspector" told Plaintiff that he would remain in segregation until his grievance was resolved and non-party Sergeant Olney told Plaintiff that his property had been lost or destroyed.

It is Plaintiff's obligation at this stage in the proceedings to plead enough factual content to permit the Court to draw a reasonable inference that the named Defendants violated Plaintiff's First Amendment rights. *See Iqbal*, 556 U.S. at 679. Plaintiff has not met his initial burden. Therefore, the Court will dismiss Plaintiff's First Amendment retaliation claims.

### D.    First Amendment Claims – Access to the Courts

Plaintiff alleges that Defendants have interfered with Plaintiff's access to the courts. It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

To state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead that the defendants' actions have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

11

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 415.

Here, Plaintiff claims that Defendant Demps interfered with Plaintiff's ability to appeal his misconduct conviction. However, this Court has previously noted that "a petition for judicial review of a misconduct conviction is not an attack on the prisoner's conviction or sentence[,] nor is it a challenge to the conditions of confinement." *Sanders v. Washington*, No. 1:21-cv-54, 2021 WL 1049876, at *4 (W.D. Mich. Mar. 19, 2021) (citing, *inter alia*, *Jackson v. Jamrog*, 411 F.3d 615, 619 (6th Cir. 2005)). Moreover, the Sixth Circuit has held that the inability to appeal a misconduct conviction does not amount to actual injury for purposes of an access to the courts claim. *See Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001). Plaintiff, therefore, cannot maintain a First Amendment access to the courts claim premised upon Defendant Demps' failure to provide Plaintiff with an appeal form to allow Plaintiff to appeal his misconduct conviction.

### E.    Fourth Amendment Claims

Plaintiff claims that Defendants violated his Fourth Amendment rights. (Compl., ECF No. 1, PageID.2.) The Fourth Amendment protects against unreasonable searches and seizures of

one's person. U.S. Const. amend. IV. Plaintiff does not elaborate as to the nature of his Fourth Amendment claims, and this Court is "not required to conjure up allegations not pleaded or guess at the nature of an argument." *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012). However, to the extent that Plaintiff refers to the seizure of his personal property and legal papers while Plaintiff was in observation, such a claim was rejected by the Supreme Court in *Hudson v. Palmer*, 468 U.S. 517 (1984).

In *Hudson*, a prison official searched a prisoner's cell and destroyed some of his legal papers in the process. *Id.* at 519, 535. The prisoner claimed that the prison official's conduct constituted an unreasonable search and seizure of his property, in violation of the Fourth Amendment. *Id.* at 530. The Court disagreed.

First, the Court recognized that while prisoners are not beyond the reach of the Constitution, "curtailment of certain rights is necessary, as a practical matter, to accommodate a 'myriad of institutional needs and objectives' of prison facilities, . . . chief among which is internal security." *Id.* at 523–24 (internal citation omitted). The Court then determined that the official's search of the prisoner's cell did not violate the Fourth Amendment because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Id.* at 526. According to the Court, "[a] right of privacy in traditional Fourth Amendment terms is fundamentally incompatible with the close and continual surveillance of inmates and their cells required to ensure institutional security and internal order." *Id.* at 527–28.

For similar reasons, the Court held that "the Fourth Amendment does not protect against seizures in a prison cell [.]" *Id.* at 528 n.8. According to the Court, "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.*

Applying *Hudson* to the case at hand, the Fourth Amendment does not prohibit the confiscation of personal property and legal papers while Plaintiff was in observation.

Moreover, any claims that Plaintiff may intend to raise regarding his confinement to segregation is similarly without merit because Plaintiff was already in state custody by virtue of his criminal convictions when Defendants allegedly "seized" him and placed him in segregation. In other words, he was already lawfully subject to all the limitations on liberty incident to arrest and imprisonment, including the possibility of confinement in segregation. Thus, transferring him from one area of the prison to a more restrictive area did not constitute a "seizure" under the Fourth Amendment, and did not require a warrant or probable cause. *Cf. Morris v. Metrish*, No. 97-1624, 145 F.3d 1332, 1998 WL 246454, at *2 (6th Cir. May 5, 1998) ("[Plaintiff's] claim that his classification to administrative segregation was an unlawful detention in violation of the Fourth Amendment is frivolous because prisoners have no reasonable expectation of privacy in their cells.").

Therefore, for each of the foregoing reasons, Plaintiff fails to state a claim for a violation of his Fourth Amendment rights.

### F.    Eighth Amendment Failure to Protect Claims

Plaintiff alleges that he informed Defendant Simon that he was being threatened "by many gang members" and requested to be moved to protective custody, but that Defendant Simon refused Plaintiff's request. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that Defendant Richardson observed Plaintiff being stabbed for three to four minutes before calling for help. (*Id.*, PageID.4.) Plaintiff alleges that Defendants Toogood and Baitenger "were in charge of B-wing saf[e]ty" but failed to protect Plaintiff. (*Id.*, PageID.7.) Finally, Plaintiff seeks to bring claims against Defendants, alleging that the facility was understaffed, leading to the January 1, 2025,

14

attack. (*Id.*) The Court will address these allegations under the Eighth Amendment framework for failure to protect.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). For a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011). An officer or other prison official is liable for another prison official's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter for Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018).

Taking Plaintiff's allegations as true as is required at this stage, the Court finds that Plaintiff has alleged sufficient facts to state an Eighth Amendment claim against Defendants Simon and Richardson.

Plaintiff also alleges that "staff" have labeled Plaintiff a "rat" because of Plaintiff's grievance. (Compl., ECF No. 1, PageID.7.) The Sixth Circuit has observed that identifying a prisoner as a "rat" or snitch may constitute deliberate indifference to the inmate's safety. *See Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001); *LaFountain v. Martin*, 334 F. App'x 738, 741 (6th Cir. 2009) (noting that "labeling an inmate a snitch satisfies the *Farmer* standard, and constitutes deliberate indifference to the safety of that inmate" (quoting *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001))). However, Plaintiff does not identify any named Defendant responsible for calling Plaintiff a rat.

To the extent that Plaintiff seeks to hold all Defendants liable based upon his reference to "staff," he has failed to state a claim for relief. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). "Summary reference to a single, five-headed 'Defendants' [or officers or staff] does not support a reasonable inference that each Defendant is liable . . . ." *Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) (citation omitted). Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim to the extent that it is premised on the allegation that staff have labeled Plaintiff as a rat.

Finally, Plaintiff's fails to state an Eighth Amendment claim premised upon his conclusory allegation that ICF was understaffed. As discussed above, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Here, Plaintiff does not allege a single fact regarding the staffing of the facility. He does not allege how may officers were required, how many officers were stationed within Plaintiff's unit, or how the staffing of the unit could have led

16

to a failure to protect Plaintiff from harm, particularly where Plaintiff alleges that an officer was available to witness the attack firsthand but did not call for help. Moreover, even if the Court were to presume that a named Defendant was aware that the facility was understaffed, that does not also mean that any named Defendant was aware of an excessive risk to Plaintiff's health and safety, nor does Plaintiff allege as much. Therefore, the Court will dismiss Plaintiff's Eighth Amendment claim premised upon the alleged understaffing of ICF.

### G.    Fourteenth Amendment Claims – Equal Protection

Plaintiff claims that Defendants violated Plaintiff's right to equal protection. (Compl., ECF No. 1, PageID.2.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations to support his equal protection claim. He fails to identify any prisoner who was similarly situated to Plaintiff in all relevant respects but treated differently. Instead, any allegations of discriminatory treatment are wholly conclusory, which, again, fails to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's Equal Protection claims will be dismissed.

### H.    Fourteenth Amendment Claims – Due Process

Plaintiff alleges his property was either lost or destroyed while Plaintiff was in observation. Plaintiff does not attribute this conduct to any named Defendant; however, even if he had, Plaintiff's due process claims regarding the deprivation of his property are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).

Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland*, 57 F.3d at 479–80; *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff fails to allege that his state post-deprivation remedies are inadequate. And Plaintiff has available to him numerous state post-deprivation remedies. The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff fails to allege any reasons why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his property. Accordingly, Plaintiff fails to state a Fourteenth Amendment due process claim regarding the deprivation of his property.

I.      **Fourteenth Amendment Claims – False Misconduct**

Plaintiff alleges that he was deprived of due process when he was falsely charged and found guilty of possessing a weapon following the January 1, 2025, fight. To prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by government action. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). Prisoners retain a liberty interest with respect to state-imposed prison discipline that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The allegations of Plaintiff's complaint do not plausibly suggest that Plaintiff's misconduct charge could have affected any interests that would fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000,[3] can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid in its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

---

[3] *See* MDOC Offender Tracking Information System, https://mdocweb.state.mi.us/OTIS2/ otis2profile.aspx?mdocNumber=292201 (last visited June 27, 2025).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff alleges that he was placed in segregation because of the misconduct charge and conviction. Confinement in segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010). Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th Cir. 2008).

In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph*, 410 F. App'x at 868 (61 days in segregation is not atypical and significant). It has also held, in specific circumstances, that confinement in segregation for a much longer period does not implicate a liberty interest. *See, e.g.*, *Jones*, 155 F.3d at 812–13 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke*, 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding). Generally, only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey*, 524 F.3d at 795 (remanding to the district court to consider whether

the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Here, Plaintiff has not spent several years in segregation. The events described in Plaintiff's complaint occurred in January 2025. Therefore, even if Plaintiff remains in segregation due to the allegedly false misconduct charge, the foregoing precedent demonstrates that the deprivation suffered by Plaintiff is/was neither atypical nor significant. Plaintiff's allegations therefore fail to implicate a liberty interest and his due process claim concerning the falsified misconduct charge and stay in segregation will be dismissed.

### J.    Fourteenth Amendment Claims - Grievances

Plaintiff also appears to dispute the handling of his grievances. He specifically claims that Defendant Leitheim provided false information in denying Plaintiff's grievance. (Compl., ECF No. 1, PageID.6; *see* ECF No. 1-1, PageID.15.) However, Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the administrative grievance process, Defendant Leitheim's conduct did not deprive Plaintiff of due process.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis.* Having conducted the review required by the PLRA, the Court determines that Defendants Unknown Party #1, Bonn, Garcia, Toogood, Demps, Washington and Leitheim will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against remaining Defendants Simon and Richardson: all official capacity claims, First, Fourth, and Fourteenth Amendment claims, Eighth Amendment claims related to the staffing of ICF and labeling Plaintiff as a "rat," and any claims related to Plaintiff's grievances. Plaintiff's Eighth Amendment claims against Defendants Simon and Richardson for failing to protect Plaintiff from the January 1, 2025, attack remain in the case.

An order consistent with this opinion will be entered.


Dated:    July 14, 2025                          /s/ Paul L. Maloney
                                                Paul L. Maloney
                                                United States District Judge

22